E-FILED
Monday, 04 March, 2019  03:27:28 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| ROXANNE FREEMAN,<br><br>     Plaintiff,<br><br>v.<br><br>BLACK HAWK COLLEGE AND ALBERT STACY,<br><br>     Defendants. | LAW NO. _____<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

**COMES NOW** the Plaintiff, Roxanne Freeman, and for her cause of action against the

Defendants, Black Hawk College and Albert Stacy, states as follows:

1.     At all times pertinent hereto the Plaintiff, Roxanne Freeman, was and is a resident

of Moline, Illinois in Rock Island County.

2.     Defendant, Black Hawk College, is a community college in the state of Illinois

with campuses in Moline and Galva Illinois in Rock Island County.

3.     Upon information and belief, Defendant Albert Stacy is a resident of Bettendorf

in Scott County, Iowa.

4.     The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 as it raises

federal questions.

5.     The amount in controversy exceeds the jurisdictional limits for district court.

6.     Plaintiff was employed by Defendant, Black Hawk College, beginning October of

2015.

7.     January 2017 was the beginning of the spring semester at Black Hawk College.

8.     Said semester, Plaintiff enrolled in Math 112 taught by Defendant, Albert Stacy.

9.      After the first exam, Plaintiff expressed concern to Defendant Stacy regarding the testing center's lack of conducive conditions for students to focus and perform optimally during the test.

10.     The second exam was proctored by Defendant Stacy in a classroom.  During said exam, Defendant Stacy engaged in conversation with Plaintiff asking inappropriate questions regarding Plaintiff's personal life and marriage.  When Plaintiff refused to answer Defendant Stacy's questions regarding her personal life, Defendant Stacy stated that he would look the information up in school's database.

11.     The third exam was also proctored by Defendant Stacy in his office.  During said exam, Defendant Stacy stood behind Plaintiff while she took the test and would put his nose in her hair and groan.  When Plaintiff attempted to move Defendant Stacy became offended and threatened to cease future help.

12.     Oftentimes, when Plaintiff was working in the tutoring center under the employment of Defendant Black Hawk College, Defendant Stacy would make a point to visit with Plaintiff.

13.     On more than one occasion, Defendant Stacy would crouch down next to Plaintiff and brush his hands and arms on the side of Plaintiff's breasts, touched Plaintiff's hair and comment on Plaintiff's appearance and scent.

14.     On one particular occasion, Defendant Stacy visited Plaintiff while she was in the tutoring center working her assigned shift and sat so close to Plaintiff that their legs were touching under the table.  Plaintiff scooted away from Defendant Stacy, but Defendant Stacy also scooted so that their legs were touching again.  Plaintiff mouthed the words "help me" to a co-worker who went and the tutor that Plaintiff used for her own math class.

2

15.     Throughout the majority of the spring semester of 2017, Defendant Stacy engaged in conversation with Plaintiff through texts and calling.

16.     On or around April 20, 2017, the following events occurred:

a.      At 9:45 p.m. Defendant Stacy began texting Plaintiff messages asking that she call him;
b.      Plaintiff called Defendant Stacy who informed her that he was on his way to her home;
c.      Plaintiff had never provided Defendant Stacy with her home address, Defendant Stacy admitted to looking up Plaintiff's address in the school's database;
d.      Plaintiff began crying and begging that Plaintiff not come to her home, and that her children were home also;
e.      Plaintiff ensured that her doors were locked, grabbed a baseball bat for protection, and peered out a window observing a car drive by more than once;
f.      Said car eventually stopped at Plaintiff's house whereupon Defendant Stacy requested that Plaintiff come and sit in his vehicle;
g.      As Defendant Stacy began to approach the house, Plaintiff's daughter called Plaintiff's phone regarding the person approaching their house;
h.      Plaintiff yelled through the door that Defendant Stacy needed to leave.

17.     After the events of April 20, 2017, Plaintiff ceased all communication with Defendant Stacy and reported the incidents that had occurred throughout the semester.

18.     Defendant Stacy was suspended for the remainder of the semester, but was allowed back on campus by Black Hawk College.

19.     After Defendant Stacy's suspension, Plaintiff refused to attend her own graduation out of fear of seeing Defendant Stacy at graduation.

20.     On May 17, 2017, Defendant Stacy did attend graduation and took a picture of himself with a co-worker of Plaintiff's and convinced Plaintiff's co-worker to send the picture to Plaintiff.

21.     After graduation and during June and July 2017, Plaintiff continued her employment with Black Hawk College tutoring students in the tutoring center.  Defendant Stacy

was allowed on campus multiple times while Plaintiff was fulfilling her employment expectations.

22.     These events led Plaintiff to obtain an Order of Protection against Defendant Stacy.

23.     From February 2017 through July 22, 2017, Ms. Freeman was subjected to sexual harassment by Albert Stacy, her professor for a math course at Black Hawk College.

24.     The sexual harassment consisted of unwanted advances, aggressive behavior, altering grades, appearing at her home unannounced and threatening her safety.

25.     Ms. Freeman suffered sexual harassment at the hands of Professor Albert Stacy. Mr. Stacy taught the Spring 2017 class of Math 112 in which Ms. Freeman was a student.

26.     Throughout the semester, Mr. Stacy engaged in sexually harassing and inappropriate behavior toward Ms. Freeman.

27.     He communicated with her in person, both in the classroom and at Ms. Freeman's on-campus job, as well as by text message.

28.     He asked her personal questions about her life, such as whether she had sex with her husband.

29.     He called her sweetheart and princess, and also complimented her eyes and the way she smelled.

30.     Mr. Stacy brushed his arms along Ms. Freeman's chest on multiple occasions.

31.     He also asked her to meet privately with him.

32.     Mr. Stacy attempted to use fear to coerce his victim.

33.     When Ms. Freeman turned down his advances, Mr. Stacy showed up at Ms. Freeman's home on April 20, 2017, terrifying both Ms. Freeman and her young daughter.

34.     Additionally, Mr. Stacy retaliated against Ms. Freeman by altering her grade in his class.

35.     In an email from Ken Nickels, Academic Dean, dated July 28, 2017, Ms. Freeman was notified that her grade in Math 112 had been changed as a result of the academic appeal process.  However, she had never contacted Mr. Nickels regarding her grade.

36.     This email about a supposed recalculation is alone sufficient evidence of Mr. Stacy's retaliation against Ms. Freeman.

37.     Ms. Freeman complained about Mr. Stacy's conduct to her direct supervisor at her on-campus job, Elizabeth Clendeny, as early as February 2017.

38.     She continued to make complaints to her supervisor approximately three times per week until May 2017, at which time she approached other school officials with her concerns

39.     Even after Ms. Freeman made complaints to Black Hawk College about Mr. Stacy's conduct, the College failed to take adequate measures to protect its students from Mr. Stacy.

40.     Although Mr. Stacy was suspended for the remainder of the semester, presumably pending the completion of an investigation, he was allowed back onto campus on multiple occasions.

41.     Ms. Freeman graduated following the Spring 2017 semester, but chose not to attend the graduation ceremony for fear of running into Mr. Stacy.

42.     Her fears were warranted, as Mr. Stacy was allowed to attend graduation, and in fact had another student send photos of himself at graduation to Ms. Freeman.

43.     Following graduation, Ms. Freeman remained on campus working at the tutoring center.

44.     Throughout the summer, she received emails letting her know that Mr. Stacy was being allowed on campus for various meetings.

45.     Clearly, these meetings could have been conducted off-campus in order to protect Mr. Stacy's victims.

46.     On one particular occasion, Ms. Freeman was informed that Mr. Stacy would be allowed on campus, but only in Building 1.  However, Mr. Stacy was permitted to enter Building 3, where Ms. Freeman was working.

47.     At that time, Ms. Freeman had gotten an Order of Protection against Mr. Stacy, and his entry into Building 3, which was not only allowed, but encouraged, by Black Hawk College, was a clear violation of that Order.

48.     It is Ms. Freeman's understanding that she is not the first or only victim of Mr. Stacy.

49.     Members of the faculty and staff have approached her to thank her for stepping forward regarding Mr. Stacy's conduct. This appears to suggest that Mr. Stacy's conduct was a known problem on campus.

50.     Ms. Freeman found the advances and harassment offensive and rejected them.

51.     Ms. Freeman made complaints about Respondent from February 2017 to May 17, 2017, but harassing and retaliatory conduct continued.

52.     The sexually offensive conduct and retaliatory conduct create a hostile and intimidating work environment for Ms. Freeman and interfered with her ability to do her job and get her education.  It also caused her significant emotional distress and continues to do so until this day.

53.     With Defendant Stacy's suspension in place, and Plaintiff's Order of Protection against Defendant Stacy obtained, Black Hawk College still allowed Defendant Stacy on campus and to enter the building where Plaintiff was working violating the very retributions put in place to ensure Plaintiff's safety.

54.     Defendant Black Hawk College was aware of previous conduct by Defendant Stacy that constituted sexual harassment of other students.

55.     Defendant Black Hawk College was aware of previous conduct by Defendant Stacy that constituted retaliation and general harassment of other students.

56.     In the past Defendant Stacy had cornered a female student in his office, run his hand through her hair and sexually harassed her.

57.     The student reported this conduct to Defendant Black Hawk College and asked to transfer out of Defendant Stacy's classroom.

58.     Defendant Black Hawk College allowed the student to transfer and did not complete an investigation into whether Defendant Stacy engaged in the alleged conduct.

59.     Defendant Black Hawk College took no action to prevent Defendant Stacy from engaging in this conduct again.

60.     Students on several occasions made Defendant Black Hawk College aware that Defendant Stacy would often make statements to his classroom that anyone that crossed him would have to deal with his ex-convict criminals.

61.     Defendant Stacy would make these and similar comments for purposes of intimidating the students in his classroom.

62.     Defendant Black Hawk College took no action to prevent Defendant Stacy from engaging in this harassing and retaliatory conduct.

63.     Defendant Black Hawk College failed to take reasonable action to prevent Defendant Stacy's conduct from recurring.

## COUNT I – VIOLATION OF TITLE IX – SEXUAL HARASSMENT

64.     Plaintiff restates the previous paragraphs as if stated herein.

65.     Defendants' conduct constitutes sexual harassment in education and employment pursuant to Title IX of the Civil Rights Act of 1964.

66.     Defendants' conduct is the legal and factual cause of damages to Plaintiff.

**WHEREFORE,** Plaintiff, Roxanne Freeman, prays for judgment against the Defendants in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, attorney fees and for such other and further relief as is just and appropriate in the circumstances.

## COUNT II – VIOLATION OF TITLE IX - RETALIATION

67.     Plaintiff restates the previous paragraphs as if stated herein.

68.     Defendants' conduct constitutes retaliation in education and employment pursuant to Title IX of the Civil Right Act of 1964.

69.     Defendants' conduct is the legal and factual cause of damages to Plaintiff.

**WHEREFORE,** Plaintiff, Roxanne Freeman, prays for judgment against the Defendants in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, attorney fees and for such other and further relief as is just and appropriate in the circumstances.

## COUNT III – VIOLATION OF ILLINOIS HUMAN RIGHTS ACT - SEXUAL HARASSMENT

70.     Plaintiff restates the previous paragraphs as if stated herein.

71.     Defendants' conduct constitutes sexual harassment pursuant to the Illinois Human Rights Act.

72.     Defendants' conduct is the legal and factual cause of damages to Plaintiff.

**WHEREFORE,** Plaintiff, Roxanne Freeman, prays for judgment against the Defendants in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, attorney fees and for such other and further relief as is just and appropriate in the circumstances.

## COUNT IV – VIOLATION OF ILLINOIS HUMAN RIGHTS ACT - RETALIATION

73.     Plaintiff restates the previous paragraphs as if stated herein.

74.     Defendant Stacy's conduct constitutes retaliation pursuant to the Illinois Human Rights Act.

75.     Defendant Stacy's conduct is the legal and factual cause of damages to Plaintiff.

**WHEREFORE,** Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, attorney fees and for such other and further relief as is just and appropriate in the circumstances.

## COUNT V – ASSAULT AND BATTERY (STACY)

76.     Plaintiff restates the previous paragraphs as if stated herein.

77.     Defendant Stacy's conduct constitutes assault and battery pursuant to Illinois law.

78.     Defendant Stacy's conduct is the legal and factual cause of damages to Plaintiff.

**WHEREFORE,** Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for

interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTION DISTRESS (STACY)

79.     Plaintiff restates the previous paragraphs as if stated herein.

80.     Defendant Stacy's conduct constitutes an intentional infliction of emotional distress pursuant to Illinois law.

81.     Defendant Stacy's conduct is the legal and factual cause of damages to the Plaintiff.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT VII – NEGLIGENCE (STACY)

82.     Plaintiff restates the previous paragraphs as if stated herein.

83.     Defendant Stacy's conduct constitutes negligence pursuant to Illinois law.

84.     Defendant Stacy's conduct is the legal and factual cause of damages to the Plaintiff.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT VIII – RESPONDEAT SUPERIOR LIABILITY (BLACK HAWK COLLEGE)

85.     Plaintiff restates the previous paragraphs as if stated herein.

86.     Defendant Stacy was an employee of Defendant Black Hawk College at the time of his tortious conduct.

87.     Defendant Stacy was on Black Hawk College campus when he committed the majority of his tortious conduct.

88.     Defendant Black Hawk College is responsible for the actions of its employees as if those actions were the action of the company.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT IX – NEGLIGENT HIRING AND RETENTION (BLACK HAWK COLLEGE)

89.     Plaintiff restates the previous paragraphs as if stated herein.

90.     Upon information and belief, Defendant Black Hawk College hired and retained Defendant Stacy in his capacity as a professor in a manner that constitutes negligence under Illinois law.

91.     Defendant Black Hawk College's conduct is the legal and factual cause of damages to the Plaintiff.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT X – NEGLIGENT SUPERVISION (BLACK HAWK COLLEGE)

92.     Plaintiff restates the previous paragraphs as if stated herein.

93.     Upon information and belief, Defendant Black Hawk College supervised Defendant Stacy in his capacity as a professor in a manner that constitutes negligence under Illinois law.

94.     Defendant Black Hawk College's conduct is the legal and factual cause of damages to the Plaintiff.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

### COUNT XI – NEGLIGENT TRAINING (BLACK HAWK COLLEGE)

95.     Plaintiff restates the previous paragraphs as if stated herein.

96.     Upon information and belief, Defendant Black Hawk College trained Defendant Stacy in his capacity as a professor in a manner that constitutes negligence under Illinois law.

97.     Defendant Black Hawk College's conduct is the legal and factual cause of damages to the Plaintiff.

**WHEREFORE,** the Plaintiff, Roxanne Freeman, prays for judgment against the Defendant in an amount deemed reasonable and proper for compensatory damages, punitive damages, for interest and costs as allowed by law, and for such other and further relief as is just and appropriate in the circumstances.

Respectfully submitted,

HOPKINS & HUEBNER, P.C.

By */s/ Eric M. Updegraff*
    Eric M. Updegraff, AT 0008025
    2700 Grand Avenue, Suite 111
    Des Moines, IA 50312
    Telephone:  515-244-0111
    Facsimile:   515-244-8935
    E-mail: eupdegraff@hhlawpc.com
    ATTORNEYS FOR PLAINTIFF

**ORIGINAL FILED.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | |
|---|---|
| ROXANNE FREEMAN, | LAW NO. _____ |
| Plaintiff, | |
| v. | **JURY DEMAND** |
| BLACK HAWK COLLEGE AND ALBERT STACY, | |
| Defendants. | |

**COMES NOW** the Plaintiff, Roxanne Freeman, and submits her jury demand requesting

a jury for all issues triable to a jury.

Respectfully submitted,

HOPKINS & HUEBNER, P.C.


By */s/ Eric M. Updegraff*
   Eric M. Updegraff, AT 0008025
   2700 Grand Avenue, Suite 111
   Des Moines, IA 50312
   Telephone:  515-244-0111
   Facsimile:   515-244-8935
   E-mail: eupdegraff@hhlawpc.com
   ATTORNEYS FOR PLAINTIFF

**ORIGINAL FILED.**